133 So.2d 864

**Z. C. ORSO, Jr.**

v.

**J. B. CATER et al.**

1 Div. 927.

Supreme Court of Alabama.

June 29, 1961.

Rehearing Denied Oct. 26, 1961.

Garet Van Antwerp, III, Van Antwerp & Rector, Mobile, for appellant.

Grady W. Hurst, Jr., Chatom, for appellees.

MERRILL, Justice.

This appeal is from a final decree holding complainants to be the owners of certain described lands and ordering respondent to pay $213.04 as damages for trespass and cutting timber on the lands.

The bill of complaint prayed that an injunction issue against appellant, restraining him from cutting or removing any timber from the lands, and prayed that title to the lands be declared to be in complainants, that appellant's deed be removed as a cloud on title of appellees, and for general relief.

An injunction was issued when the bill was filed, but no motion was made to dissolve. Demurrer to the bill having been overruled, an appeal was taken to this court. The only grounds of demurrer argued in brief on that appeal were that the lands were not sufficiently described in the bill. We affirmed the decree overruling the demurrer. 268 Ala. 130, 105 So.2d 108.

The case was then tried on the merits and the decree was in favor of the complainants.

The complainants are J. B. Cater, who claims a life interest in the lands, and his son, J. F. Cater, who claims the fee, subject to his father's life estate.

The lands in question were patented in 1901 to Thomas Bradford, who died around 1911. His heirs lived on the land or nearby. J. B. Cater, 90 years of age, testified that William Bradford, a son of Thomas Bradford, had borrowed $100 from him to pay a fine, and finally, between 1911 and 1913, William Bradford and all the other

heirs of Thomas Bradford executed a deed to the property and delivered it to him. He testified that the deed was never recorded and was lost. His safe at his store was burglarized in 1916 and his store building burned in 1934, and he kept his papers at the store.

J. B. Cater began assessing and paying taxes on the lands in 1914, and he or his sons have continued to pay the taxes since that time. In 1926, J. B. Cater deeded the property to his wife, and when she died in 1946, her title vested in her sons, J. F. and W. F. Cater, subject to her husband's life estate. W. F. Cater later conveyed all of his interest to his brother, J. F. Cater.

The respondent, Orso, secured a deed from William Bradford and the other heirs of Thomas Bradford in January, 1957. He immediately went upon the land and started cutting timber. The original bill was filed and he was enjoined from cutting the timber.

At trial, complainants claimed title under two theories, first, the lost deed executed in 1913 by the Bradford heirs, and second, exclusive assessment and payment of taxes and possession of the land from 1914 to the date the suit was filed in 1957.

Appellant defended by denying the lost deed, denying the possession by appellees and claimed to be an innocent purchaser for value. The trial court found the issues in favor of complainants. Counsel for appellant on this appeal did not participate in the trial in circuit court.

Much discussion is made in brief of the lost deed, but we lay aside that question, because the decision here can be rested on the second theory advanced by appellees.

The evidence is without dispute that William Bradford stayed on the land during most of the time from 1913 until 1957. He was away two years in 1916 and 1917 when he went to Ohio, but when he returned he moved back on the property.

The main question in the case is the status of William Bradford's occupancy of the land. The appellant contends that Bradford owned the land or a part of it and his occupancy was the occupancy of all the heirs of Thomas Bradford. Appellees contend that his occupancy was that of a tenant and their evidence tends to show that they have assessed and paid taxes on the land for 45 consecutive years preceding the trial; that all the Bradford heirs moved off the property except William, who remained as a tenant; that J. B. Cater cut timber off the land on numerous occasions and had it surveyed twice; he gave a mortgage on it in 1920, deeded it to his wife in 1926, posted the land during 1950, gave William Bradford permission to move part of the house he was living in off the land, leased hunting rights in 1956, leased a boat landing, and offered several witnesses who testified that William Bradford had told them the land was Mr. Cater's and that he was living there with Mr. Cater's permission. It was also shown that the land was reputed in the community to belong to the Caters.

Appellant produced witnesses showing that the land was known as the Bradford land, that they used boats by permission of William Bradford, got hunting and fishing permission from William Bradford; that William Bradford occupied and farmed part of the land for over 20 years, kept a few head of stock on it, and they did not know the Caters claimed the land. Some relatives of William Bradford testified on each side, but William Bradford did not testify although the testimony showed that he was living in Mobile at the time of trial.

Whether William Bradford was a tenant of the Caters was a question of fact and it was resolved in favor of appellees by the court, after seeing and hearing more than 32 witnesses testify. Applying the usual rule in such cases, the equity court's conclusion on the facts has the force and effect of a jury verdict. We see no plain or palpable error in the decision

on the question of fact. Spradling v. May, 259 Ala. 10, 65 So.2d 494.

But appellant argues that appellees cannot claim adverse possession under the statute because they have no color of title if the alleged lost deed is not recognized. Assuming, arguendo, that this be correct, complainants did have color of title from the deed of J. B. Cater to his wife, which was executed and recorded in 1926. They had paid taxes from 1914 to 1957, or 31 years after color of title was recorded and before suit was filed. This is sufficient to support a claim of adverse possession under Tit. 7, § 828, Code 1940.

It is elementary that, as between landlord and tenant, possession of the tenant is possession of the landlord. Stephens v. Stark, 232 Ala. 485, 168 So. 873. Since William Bradford's possession was that of the Caters, it could not be the possession of the heirs of Thomas Bradford. Therefore, we have the Caters in possession of the lands for 43 years and they were the only people listing and paying taxes on the lands for that period.

The rule of prescription also applies. For more than twenty years prior to appellant's claim, appellees had been in possession without recognition of right or admission of liability in anyone else. This operates as an absolute rule of repose. Morris v. Yancey, 267 Ala. 657, 104 So.2d 553, and cases there cited.

We mention briefly appellant's defense that he was an innocent purchaser for value when he secured the deed from the Bradford heirs in 1957. We have held that to constitute one a bona fide purchaser without notice and entitle him to the protection against a prior equity or conveyance, it is essential (1) that he is the purchaser of the legal as distinguished from an equitable title; (2) that he purchased the same in good faith; (3) that he parted with value as a consideration therefor by paying money or other thing of value, assuming a liability or incurring an injury; (4) that he had no notice, and knew no fact sufficient to put him on inquiry as to complainant's equity, either at the time of his purchase, or at or before the time he paid the purchase-money, or otherwise parted with such value. Holgerson v. Gard, 257 Ala. 579, 60 So.2d 427, 33 A.L. R.2d 1315; Larkins v. Howard, 252 Ala. 9, 39 So.2d 224, 7 A.L.R.2d 541.

According to the testimony of several witnesses, the property in question was worth between $5,000 and $6,000. Appellant said he paid $375 for his deed while one witness, William Bradford's daughter, with whom he lived, testified that William Bradford did not receive any money for his deed to appellant. It was questionable that appellant was a purchaser for value.

One of appellant's witnesses testified on cross-examination that appellant paid her and her husband $75 to sign the deed and said he was going to have to take the matter to court. This, with other circumstances, would indicate that the purchase was not made in good faith. Leslie v. Click, 221 Ala. 163, 128 So. 170, 172.

The other circumstances were the exclusive payment of taxes by the Caters for 43 years, their recorded deeds and mortgages to the property, the evidence of previous timber cuttings from the land, and the community reputation of the Cater ownership. We said in Leslie v. Click, supra:

"A purchaser with sufficient information to stimulate inquiry which would lead to knowledge of adverse or hostile and superior claim or title, and fails therein, the injury is the result of his own folly—he is wanting in good faith, an indispensable element of a purchaser (for value) without notice—and a court of equity will not protect such reckless purchaser."

Appellant raises the question that appellees were not in peaceable possession

because the bill showed appellant was cutting timber on the land; and the statute, Tit. 7, § 1109, Code 1940, requires that the party filing the bill be in peaceable possession. It is true that the complainant cannot recover under the statute unless his proof shows his peaceable possession, as contradistinguished from a contested, disputed or scrambling possession. Motley v. Crumpton, 265 Ala. 565, 93 So.2d 413; McGowin v. Felts, 263 Ala. 504, 83 So.2d 228; 16 Ala.Dig., Quieting Title, ⊸12(9).

But the jurisdiction of the equity court does not depend upon Tit. 7, § 1109, to entertain this suit. In addition to the allegations supporting the injunction and those seeking the quieting of title, there was the independent equity involving the removal of appellant's deed as a cloud on appellees' title.

Having decided that appellees have title, we apply Tit. 7, § 86, Code 1940, which provides:

"Where two persons claim to have actual possession of the same land, he is deemed in possession who has the legal title, and the other is a trespasser."

Under this statute, appellees had possession and appellant was a trespasser.

This court is committed to the equitable right of injunction by the owner of land in possession when the trespass consists in the destruction of the substance of a material portion of that which is its chief value, or trespass is of a continuous or repeated nature, so that actions at law would be inadequate. Green v. Mutual Steel Co., 268 Ala. 648, 108 So.2d 837; Lewis v. Hicks, 264 Ala. 440, 87 So.2d 867, 60 A.L.R.2d 307.

Also, if one is in possession of land claiming title, he may usually maintain an injunction to prevent another not in possession from entering upon it and destroying its substance or erecting a permanent structure upon it, or committing continuous trespasses, without conceding in him possession by reason of such acts of trespass so as to require complainant to sue for possession as a condition to relief. Birmingham Trust & Savings Bank v. Mason, 222 Ala. 38, 130 So. 559; Acker v. Green, 216 Ala. 445, 113 So. 411.

In Camp v. Conner, 205 Ala. 468, 88 So. 578, a bill for injunction was filed by parties who had been in possession of property for 35 to 40 years against a party who had secured a deed to the property from one who had not owned it, and had entered on the property, cutting trees and doing irreparable injury. The court held there was equity in the bill, that complainants owned the land, the defendants had no interest in or right to the land, and possession should be restored to the complainants. Such is the effect of the holding in the instant case.

Appellant argues that the land is not correctly described. There is no argument as to the land which is claimed by appellees—the property allegedly misdescribed is an exception which appellees do not claim. We think the property is sufficiently described in the decree to enable an officer executing the decree to locate the land involved without having to exercise discretion in the matter. Puryear v. Smith, 233 Ala. 505, 173 So. 17; Orso v. Cater, 268 Ala. 130, 105 So.2d 108.

Assignments of error 26 through 30 cannot be considered because they are too general. We illustrate by quoting No. 26:

"The Court erred in sustaining the objections of the Appellees (Complainants below) to testimony sought to be offered by Appellant (Respondent below) that William Bradford, from whom Appellant acquired an interest in the lands in question, was claiming to own said lands or an interest therein, at the time said Bradford executed his deed, and prior thereto."

Such an assignment of error does not state concisely in what the error consists. Errors assigned in this way will not be considered by the court. Jackson Lumber Co. v. Butler, 244 Ala. 348, 13 So.2d 294; Thompson v. State, 267 Ala. 22, 99 So.2d 198. Supreme Court Rule 1. Furthermore, there was no citation in the assignment of error of the transcript page on which the alleged error could be found. Brooks v. Everett, Ala., 124 So.2d 105[6]. This disposes of all the argued assignments of error.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.